JOY COSSICH LOBRANO, Judge.
_JjThis appeal arises from a lawsuit to recover the balance owed on a VISA Card account. The defendant, Kenneth DelCor-ral (“DelCorral”), appeals a summary judgment, awarding the plaintiff, Midland Funding, LLC (“Midland”), $6,098.52 plus interest, attorney’s fees and costs. For the reasons that follow, we affirm the judgment.
On July 18, 2011, Midland filed a petition, alleging that it is the owner of all rights, title and interest in the receivable issued through Chase Bank USA N.A. (“Chase Bank”) to DelCorral, the individual account holder. It alleges that DelCor-ral is justly indebted to it in the full sum of $6,098.52, together with additional interest of 4% from July 31, 2009, until judgment, and 4% from date of judgment, attorney’s fees in the amount of 25% of the total of both principal and interest, and all court costs incurred in collecting the debt. Midland further alleges that DelCorral agreed to the interest and attorney’s fees when he opened the account. Finally, it alleges that DelCorral has defaulted and the balance remains, even though it made amicable demand on May 26, 2011.
|2In response, DelCorral raised a dilatory exception of vagueness, asserting the petition lacked sufficient facts and attached documentation to evidence the debt. The trial court overruled the exception.[1] Thereafter, DelCorral answered the petition, denying the allegations and challenging the authenticity of Midland’s supporting documents. He also asserted the affirmative defenses of incorrectness of balance, fraud, duress, estoppel, extin-guishment, set-off and compromise.
*636 Thereafter, Midland filed a Motion for Summary Judgment, supported by two affidavits and pertinent account documentation. The first affidavit, by Suzanne Du-monceaux, states the following: she is a legal specialist employed by Midland Credit Management, Inc. (“MCM”), the servicer of the VISA Card account on behalf of Midland; she has access to pertinent account records of MCM; and, she makes the statements in the affidavit based upon personal knowledge of those account records. Dumonceaux further attests that Midland is the current owner of, and/or successor to, the obligation sued upon, and was assigned all the rights, title and interest to DelCorral’s Chase Bank VISA Card account 4266841138137995 (MCM Number 8539174810). She states she is familiar with the manner and method by which MCM creates and maintains its business records pertaining to the account. Du-monceaux further states that the account shows DelCorral owes a balance of $6,098.52; and that she is advised the balance will continue to accrue interest at a rate of 4.00% as an annual percentage 1 arate until judgment is entered, after which interest on the unpaid balance shall accrue as provided by law and as set forth within the terms of the judgment. Lastly, Dumonceaux attests that the statement of account attached to her affidavit is a true and correct account and/or billing statements) relating to this matter, as reflected in MCM’s records. The attached documentation included the Cardmember Agreement; a copy of the Bill of Sale that transferred ownership of the receivable from Chase Bank to Midland; and, copies of the monthly credit card statements.
The second affidavit, by Keith Sias, states that he is employed by Gregory M. Eaton, the attorney for Midland; is primarily responsible for this file; and is familiar with DelCorral’s VISA Card account. He states the matter was received by the Office of Gregory M. Eaton, Attorney at Law, on May 22, 2011, and has been continually monitored since that date. Sias states that on February 22, 2012, Midland, holder of credit issued through Chase Bank, indicated a balance due from Kenneth DelCorral, totaling $6,098.52, additional interest of 4% from July 31, 2009, plus attorney’s fees in the amount of 25% of the total of both principal and interest, and the amount due is on the DelCorral’s VISA Card # 4266841138137995.
DelCorral filed an opposition to the motion for summary judgment and a countervailing affidavit, swearing that he never executed a credit application with Chase Bank or agreed to the terms of the Card-member Agreement. He further averred that the credit card statements produced by Midland bearing his name and Ldated 01/15/08-2/14/08 through 02/15/09-03/14/09 were issued by Countrywide Bank, not Chase Bank. DelCorral swears the documents produced by Midland in support of the alleged indebtedness are not authentic or trustworthy. In conclusion, DelCorral swears that Midland is fraudulently representing to the court that he entered into a credit card agreement with Chase Bank.
Following a hearing on June 26, 2012,[2] the trial court granted the motion for summary judgment and rendered judgment in favor of Midland.
On appeal, DelCorral asserts the trial court erred in granting summary judgment because Midland failed to establish a prima facie case. Specifically, he argues Midland failed to produce evidence of a signed contract between himself and Countrywide, and, in the absence of said contract, genuine issues of material fact remain as to how the pre-existing balance of *637 $4,446.09 on the Chase VISA Card account summary was calculated. DelCorral contends that the calculation of principal, cash withdrawals, interest, rate of interest, late fees, finance charges, over the limit fees, and entitlement to attorney’s fees are all based on the original credit card agreement, which Midland failed to produce.
An appellate court reviews summary judgments de novo, using the same criteria that govern the trial court’s determination of whether summary judgment is appropriate. Samaha v. Rau, 2007-1726, pp. 3-4 (La.2/26/08), 977 So.2d 880, 882. A motion for summary judgment will be granted “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the 15affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law.” La. C.C.P. art. 966(B). “The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action ...[.] The procedure is favored and shall be construed to accomplish these ends.” La. C.C.P. art. 966(A)(2). As to the burden of proof on a motion for summary judgment, La. C.C.P. art. 966(C)(2), provides:
The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
A material fact is one that potentially insures or precludes recovery, affects a litigant’s ultimate success, or determines the outcome of the lawsuit. Hines v. Garrett, 2004-0806, p. 1 (La.6/25/04), 876 So.2d 764, 765. A genuine issue is a “triable issue.” Smith v. Our Lady of the Lake Hosp., Inc., 93-2512, p. 27 (La.7/5/94), 639 So.2d 730, 751. If reasonable persons could disagree after considering the evidence, a genuine issue exists. However, if reasonable persons could reach only one conclusion on the state of the evidence, there is no need for a trial on that issue and summary judgment is appropriate. Id.
| fiIn proving a claim on an open account, the plaintiff creditor must first prove the account by showing that the record of the account was kept in the course of business and by introducing supporting testimony regarding its accuracy. Once a prima facie case has been established, the burden shifts to the debtor to prove the inaccuracy of the account or to prove that the debtor is entitled to certain credits. Sears, Roebuck and Co. v. Patricia Dennies, 03-1160, 03-1161, p. 9 (La.App. 5 Cir. 3/30/04), 870 So.2d 1080, 1084-85.
In this case, Midland established a prima facie case in the form of the affidavits and supporting documentation. The documentation identifies DelCorral as the account holder, confirms the credit terms, and verifies the account balance, the supporting monthly statements, and Midland as the current owner of the account. Du-monceaux’s affidavit verifies the records were kept in the regular course of business and the accuracy of the accounts.
Once Midland established a prima facie case, the burden shifted to DelCorral *638 to prove the inaccuracy of the account or to prove that he is entitled to certain credits. DelCorral failed to produce any evidence to negate the evidence presented by Midland. He produced no evidence that he satisfied any part or all of the debt or that the charges on the account are inappropriate. Although he submitted a countervailing affidavit, denying that he entered into a credit agreement with Chase Bank,[3] the affidavit does not raise a genuine issue of 17material fact that would preclude a summary judgment. Also, the fact that Midland did not produce DelCorral’s original signed credit card agreement with Countrywide is of no consequence considering Midland produced evidence that Del-Corral purchased goods using the Countrywide VISA card and made payments to the account. As per the Cardmember Agreement, the contract between the parties was perfected upon use of the card by DelCorral. See Bank of Louisiana v. Berry, 94-576, p. 5 (La.App. 5 Cir.App. 12/14/94), 648 So.2d 991, 993.
At the conclusion of the hearing, the trial court stated:
Based on the record and argument of Counsel, I’m going to grant the Motion for Summary Judgment. I find that Mr. DelCorral’s use of the card, payments made created the contract. Any sale or any transfer of balance from Countrywide to Chase, should he have had any issue with that should have been made at the time the statements began coming under the name of Chase Bank. He failed to do that and it wasn’t until this lawsuit was filed that he made any objections to the transfer from Countrywide to Chase or questioned any amounts, any payments or charges made once it became a Chase account.
Furthermore, as acknowledged by Defense Counsel[,] the sale of these debts is common and I’m not going to take a position on that. I think there’s precedent in this court as well as in the Fourth Circuit that the sale of these debts are proper and lays forth what the purchaser of the debt has to do in order to recover the balance due that they have purchased.
IsAfter reviewing the record, we find Midland presented a prima facie case in support of the motion for summary judgment. The burden of proof then shifted to Del-Corral, who failed to support it. Thus, we find no error in the trial court’s ruling.
Accordingly, for the reasons herein, the trial court judgment is affirmed.
AFFIRMED

. Prior to the court's ruling, Midland filed a Request for Genuineness of Documents and Request for Production of Documents and attached the following: a copy of the Card-member Agreement; a copy of the Bill of Sale that transferred ownership of the receivable from Chase Bank to Midland; and copies of the monthly credit card statements.

. The hearing took place before the effective date of La. C.C.P. art. 966(E)(2).

. In order to clarify the conversion of the account from Countrywide to Chase, Midland had filed into the record a document generated from the internet from the source Credit Cards For People With Bad Credit Rating, which explained Countrywide's acquisition by Bank of America in 2009 and the discontinuation of the Countrywide credit cards. The source states:
In the first quarter of 2009, Bank of America acquired Countrywide Financial. Since First USA was owned by Chase, the decision to discontinue the Countrywide credit card was made. Letters were sent to cardholders in February 2009 stating that the relationship between Countrywide and First USA has concluded and that the Countrywide credit card was now being replaced by the Chase Freedom credit card. Though this still depended on the credit worthiness of the cardholders, it didn’t leave them in confusion. They were given a month to continue using their Countrywide credit card and to redeem rewards from Countrywide's Reward Program. If they were qualified for the Chase Freedom credit card, they will be allowed to use the same account number and to transfer all remaining balances to their Chase card. No other conditions were included in this letter.
Although the document was hearsay, DelCor-ral did not object to its introduction.